UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE AVILA-DIAZ, | Case No. CV 12-5519 JC |
| Plaintiff, | |
| | MEMORANDUM OPINION |
| v. | |
| | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

I.    **SUMMARY**

On June 25, 2012, plaintiff Felipe Avila-Diaz ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; June 28, 2012 Case Management Order ¶ 5.

///

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.     BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **        DECISION**

6        On March 27, 2009, plaintiff filed an application for Disability Insurance

7    Benefits.  (Administrative Record ("AR") 122).  Plaintiff asserted that he became

8    disabled on October 13, 2008, due to depression, nervousness, distrust of people,

9    ability easily to be stressed, overwhelmed and irritable, diabetes which affects

10   vision, high blood pressure, and sleep apnea.  (AR 142).  The ALJ examined the

11   medical record and heard testimony from plaintiff (who was represented by

12   counsel) and a vocational expert on November 19, 2010.  (AR 37-64).

13       On March 24, 2011, the ALJ determined that plaintiff was not disabled

14   through the date of the decision.  (AR 16-24).  Specifically, the ALJ found:

15   (1) plaintiff suffered from the following severe impairments:  depressive disorder

16   (not otherwise specified ("NOS")), sleep apnea, diabetes mellitus-type 2,

17   hypertension and obesity (AR 18); (2) plaintiff's impairments, considered singly

18   or in combination, did not meet or medically equal a listed impairment (AR 19);

19   (3) plaintiff retained the residual functional capacity to perform a full range of

20   work at all exertional levels with certain nonexertional limitations[2] (AR 20);

21

22   _____

23       [1]The harmless error rule applies to the review of administrative decisions regarding
disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of
application of harmless error standard in social security cases) (citing, *inter alia*, Stout v.
24   Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

25

26       [2]More specifically, the ALJ determined that plaintiff (i) could perform a full range of
work at all exertional levels; (ii) could understand and remember simple, routine tasks; (iii) could
27   carry out short and simple instructions, including detailed but not complex instructions;
(iv) could make judgments and decisions consistent with simple, unskilled duties; (v) had mild
28   limitations in the ability to maintain attention and concentration for extended periods of 2 hours;

(continued...)

2

1    (4) plaintiff could perform his past relevant work as a warehouse worker (AR 23);

2    and (5) plaintiff's allegations regarding his limitations were not credible to the

3    extent they were inconsistent with the ALJ's residual functional capacity

4    assessment (AR 20).

5         The Appeals Council denied plaintiff's application for review.  (AR 2).

6    **III.   APPLICABLE LEGAL STANDARDS**

7         **A.   Sequential Evaluation Process**

8         To qualify for disability benefits, a claimant must show that the claimant is

9    unable "to engage in any substantial gainful activity by reason of any medically

10   determinable physical or mental impairment which can be expected to result in

11   death or which has lasted or can be expected to last for a continuous period of not

12   less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)

13   (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The

14   impairment must render the claimant incapable of performing the work claimant

15   previously performed and incapable of performing any other substantial gainful

16   employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094,

17   1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

18        In assessing whether a claimant is disabled, an ALJ is to follow a five-step

19   sequential evaluation process:

20        (1)   Is the claimant presently engaged in substantial gainful activity?  If

21              so, the claimant is not disabled.  If not, proceed to step two.

22        (2)   Is the claimant's alleged impairment sufficiently severe to limit

23              the claimant's ability to work?  If not, the claimant is not

24              disabled.  If so, proceed to step three.

25   ///

26   _____

27        [2](...continued)
     and (vi) had mild limitations in the abilities to perform activities within a schedule, maintain
28   regular attendance, and be punctual within customary tolerances.  (AR 20).

(3)     Does the claimant's impairment, or combination of
        impairments, meet or equal an impairment listed in 20 C.F.R.
        Part 404, Subpart P, Appendix 1?  If so, the claimant is
        disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to
        perform claimant's past relevant work?  If so, the claimant is
        not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when
        considered with the claimant's age, education, and work
        experience, allow the claimant to adjust to other work that
        exists in significant numbers in the national economy?  If so,
        the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at
1110 (same).

        The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch
v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of
proving disability).

**B.     Standard of Review**

        Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal
error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
(9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."  Richardson v. Perales,
402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

1  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
2  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

3      To determine whether substantial evidence supports a finding, a court must
4  "'consider the record as a whole, weighing both evidence that supports and
5  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
6  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
7  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
8  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
9  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

10  **IV.   DISCUSSION**

11      Plaintiff contends that the ALJ improperly rejected the medical opinions
12  provided by his treating physicians.  (Plaintiff's Motion at 3-6).  Plaintiff is not
13  entitled to a reversal or remand on this basis.

14      **A.   Pertinent Facts**

15      In an October 11, 2010 Mental Impairment Questionnaire, plaintiff's
16  treating psychologist, Dr. Michael J. Parra, diagnosed plaintiff with depressive
17  disorder NOS, and opined, in pertinent part, that (i) plaintiff had made "fair to
18  good treatment progress" over time; (ii) plaintiff's prognosis was "fair"; (iii) Dr.
19  Parra's office had not prescribed plaintiff any medication; (iv) plaintiff would
20  likely be absent from work more than three times a month due to his impairments
21  or treatment; and (v) plaintiff's mental abilities and aptitude to do even unskilled
22  work were all fair to poor or none (collectively "Dr. Parra's Opinions").  (AR 508-
23  13).

24      In an October 14, 2010, Physical Residual Functional Capacity
25  Questionnaire, plaintiff's treating physician, Dr. Narciso M. Azurin, diagnosed
26  plaintiff with, *inter alia*, chronic low back pain, diabetes mellitus-type 2,
27  depression, generalized anxiety disorder, and stress syndrome, and opined, in
28  pertinent part, that (i) plaintiff had persistent, moderate to severe bilateral pain in

1    his lumbar spine, cervical spine, thoracic spine, shoulders, arms, hands and legs;

2    (ii) plaintiff essentially could not function in a competitive work situation (*i.e.*,

3    plaintiff could sit, stand or walk for less than 2 hours in an 8 hour day, plaintiff

4    needed to shift positions at will, plaintiff needed to take unscheduled breaks every

5    hour for at least 15 minutes at a time); and (iii) plaintiff would likely be absent

6    from work more than three times a month due to his impairments or treatment

7    (collectively "Dr. Azurin's Opinions").  (AR 514-20).

8         **B.    Pertinent Law**

9         In Social Security cases, courts employ a hierarchy of deference to medical

10   opinions depending on the nature of the services provided.  Courts distinguish

11   among the opinions of three types of physicians:  those who treat the claimant

12   ("treating physicians") and two categories of "nontreating physicians," namely

13   those who examine but do not treat the claimant ("examining physicians") and

14   those who neither examine nor treat the claimant ("nonexamining physicians").

15   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

16   treating physician's opinion is entitled to more weight than an examining

17   physician's opinion, and an examining physician's opinion is entitled to more

18   weight than a nonexamining physician's opinion.[3]  See id.  In general, the opinion

19   of a treating physician is entitled to greater weight than that of a non-treating

20   physician because the treating physician "is employed to cure and has a greater

21   opportunity to know and observe the patient as an individual."  Morgan v.

22   Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

23   1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

24   ///

25   _____

26        [3]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to
27   draw bright line distinguishing treating physicians from non-treating physicians; relationship is
     better viewed as series of points on a continuum reflecting the duration of the treatment
28   relationship and frequency and nature of the contact) (citation omitted).

1    The treating physician's opinion is not, however, necessarily conclusive as
2 to either a physical condition or the ultimate issue of disability.  Magallanes v.
3 Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d
4 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not
5 contradicted by another doctor, it may be rejected only for clear and convincing
6 reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal
7 quotations omitted).  The ALJ can reject the opinion of a treating physician in
8 favor of another conflicting medical opinion, if the ALJ makes findings setting
9 forth specific, legitimate reasons for doing so that are based on substantial
10 evidence in the record.  Id.  (citation and internal quotations omitted); Thomas v.
11 Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out
12 detailed and thorough summary of facts and conflicting clinical evidence, stating
13 his interpretation thereof, and making findings) (citations and quotations omitted);
14 Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to
15 reject a treating physician opinion – court may draw specific and legitimate
16 inferences from ALJ's opinion).  "The ALJ must do more than offer his
17 conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must
18 set forth his own interpretations and explain why they, rather than the
19 [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the
20 treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599,
21 602 (9th Cir. 1989).

22    **C.    Analysis**

23    Plaintiff contends that a remand or reversal is warranted because the ALJ
24 improperly rejected the specific opinions of Dr. Azurin and Dr. Parra that plaintiff
25 would likely be absent from work more than three times a month due to his
26 impairments or treatment.  (Plaintiff's Motion at 5) (citing AR 511, 520).  The
27 Court disagrees.
28 ///

7

1    First, Dr. Parra's October 11, 2010 Mental Impairment Questionnaire

2    essentially contained only check-the-box opinions. (AR 508-13). As the ALJ

3    noted, apart from nominal references to plaintiff's subjective symptoms, Dr. Parra

4    provided no explanation of the findings which brought the treating psychologist to

5    conclude that plaintiff had the noted significant mental limitations (*i.e.*, that

6    plaintiff would likely be absent from work more than three times a month). (AR

7    22, 511-13). More specifically, Dr. Parra did not provide any clinical findings

8    (*i.e.*, results of objective psychological testing or mental status examinations) –

9    either his own or from another doctor – to support his opinions. (AR 22, 508-13).

10   In fact, the record does not reflect that Dr. Parra conducted any objective

11   psychological testing of plaintiff other than an initial mental status examination

12   conducted when plaintiff began treatment with Dr. Parra in April 2009. (AR 355-

13   57, 360-62, 482-89, 508-13, 230-36). Thus, the ALJ properly declined to give any

14   of Dr. Parra's Opinions "controlling weight" on this basis alone. See Crane v.

15   Shalala, 76 F.3d 251, 253 (9th Cir. 1996) ("ALJ [] permissibly rejected

16   [psychological evaluation forms] because they were check-off reports that did not

17   contain any explanation of the bases of their conclusions."); see also De Guzman

18   v. Astrue, 343 Fed. Appx. 201, 209 (9th Cir. 2009)[4] (ALJ "is free to reject

19   'check-off reports that d[o] not contain any explanation of the bases of their

20   conclusions.'") (citing id.); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983)

21   (expressing preference for individualized medical opinions over check-off

22   reports).

23   Second, the ALJ properly rejected the significant limitations expressed in

24   Dr. Parra's Opinions because they were not supported by the treating

25   psychologist's own notes or the record as a whole. See Bayliss v. Barnhart, 427

26

27   _____

28   [4]Courts may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.
     See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

8

F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"). For example, as the ALJ discussed in great detail, treatment records reflect that plaintiff's mental condition actually progressively improved while he was seeing Dr. Parra. (AR 21) (citing Exhibits 21F [AR 482-89], 29F [AR 530-36]). As recently as September 2010, Dr. Parra noted that plaintiff was "stable on his medications" and had a global assessment of functioning ("GAF") score of 82,[5] which indicated that plaintiff had "good functioning in all areas with an absence of symptoms, or minimal symptoms at best." (AR 21, 530); see Warre v. Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") (citations omitted).

Third, the ALJ properly rejected Dr. Azurin's Opinions which were also unsupported by the treating physician's own notes or the record as a whole. See Bayliss, 427 F.3d at 1217; Connett, 340 F.3d at 875. As the ALJ noted, although Dr. Azurin's more recent treatment records documented that plaintiff complained

---

[5]A GAF score is a clinician's judgment of an individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 2000). A GAF score between 81 and 90 indicates "[a]bsent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members)." DSM-IV at 34.

of back pain, they do not reflect that Dr. Azurin conducted any objective testing that would support the extreme physical limitations Dr. Azurin assessed for plaintiff. (AR 21) (citing Exhibits 27F [AR 514-20]; 28F [AR 522-28]). More significantly, as the ALJ noted, results of objective testing by Dr. Khalifa Mansour, a neurologist to whom Dr. Azurin referred plaintiff, were essentially unremarkable. (AR 21) (citing Exhibit 30F [AR 538-40, 543-45]). For example, a cerebrovascular profile of plaintiff was normal (which showed there was no evidence of significant extracranial arterial disease) (AR 544), a memory performance index test was within normal limits (which made it unlikely that plaintiff had cognitive impairment) (AR 544), and an MRI of plaintiff's lumbar spine reflected no stenosis, mild to moderate hypertrophy and minimal disc bulge (AR 543). As the ALJ also noted, the record does not reflect that plaintiff sought, or that Dr. Azurin prescribed, any follow-up treatment with an orthopedic or other specialist for plaintiff's allegedly severe back pain – which is also inconsistent with the significant physical limitations found by Dr. Azurin. (AR 21). See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected a treating physician's opinion who prescribed conservative treatment and where the plaintiff's activities and lack of complaints were inconsistent with the physician's disability assessment). Dr. Azurin's opinions regarding plaintiff's mental impairments also find no objective support in the treating physician's own notes. As the ALJ noted, although Dr. Azurin treated plaintiff with Paxil, the record does not reflect that Dr. Azurin conducted any objective psychological testing of plaintiff (*e.g.*, a mental status examination), much less testing that would support mental limitations for plaintiff beyond those already accounted for in the ALJ's residual functional capacity assessment. (AR 21) (citing Exhibits 1F [AR 223-32]; 4F [AR 241-64]; 5F [AR 266-79]; 8F [AR 294-345]; 20F [AR 407-80]; 27F [AR 514-20]; 28F [AR 522-28]; 30F [AR 538-52]).

///

1   Finally, the ALJ properly rejected the opinions of Drs. Parra and Azurin, in
2   part, in favor of the conflicting opinion of the state-agency examining psychiatrist,
3   Dr. Jeffrey D. Litzinger, who determined, *inter alia*, that plaintiff was only mildly
4   limited in his ability to associate with day-to-day work activity, including
5   attendance.  (AR 369).  Dr. Litzinger's opinion was supported by his independent
6   psychological examination of plaintiff (AR 363-69), and thus, without more,
7   constituted substantial evidence upon which the ALJ could properly rely to reject
8   the treating doctors' opinions.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144,
9   1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted
10  substantial evidence, because it rested on independent examination of claimant);
11  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  While plaintiff suggests
12  that a mild limitation in plaintiff's ability to maintain regular attendance is
13  equivalent to Drs. Parra and Azurin's findings that plaintiff would likely be absent
14  from work more than three times a month (which, according to the vocational
15  expert, would preclude all work (AR 62)) (Plaintiff's Motion at 5), the Court will
16  not second-guess the ALJ's implicit determination to the contrary.  See Robbins,
17  466 F.3d at 882.
18          Accordingly, a remand or reversal on this basis is not warranted.
19  **V.    CONCLUSION**
20          For the foregoing reasons, the decision of the Commissioner of Social
21  Security is affirmed.
22          LET JUDGMENT BE ENTERED ACCORDINGLY.
23  DATED:   November 29, 2012
24                                          _____
                                                        /s/
25                                          Honorable Jacqueline Chooljian
26                                          UNITED STATES MAGISTRATE JUDGE
27
28